### Chicago & Northwestern Railway Company v. Lillian Thomson, Administratrix.

#### Gen. No. 4,693.

1. CONTRIBUTORY NEGLIGENCE—*when person guilty of.* A person who receives an injury is guilty of contributory negligence where he does that thing which no reasonable mind would do and is thereby made the subject of the injury complained of.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Whiteside county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1906. Reversed, with finding of fact. Opinion filed October 16, 1906.

D. J. CARNES and S. A. LYNDE, for appellant; LLOYD W. BOWERS, of counsel.

BLODGETT & RIORDON, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Robert C. Thomson was a section man on the Chicago & Northwestern Railway and was killed while on duty September 8, 1904, by a fast mail train running upon said railway. The administratrix of his estate brought this suit to recover for the benefit of his next of kin, damages on account of his death. The first count of the declaration charged that said train was negligently run at a great rate of speed without due care for the safety of employes of defendant, and

that by reason of such careless operation defendant struck and killed deceased. The second count charged that no bell was rung or whistle sounded, as required by statute. Additional counts were afterwards filed and issues were joined on counts five, seven and eight. The fifth count charged negligence in not stopping said train when the servants of defendant in charge of it could by the exercise of reasonable care have seen the person on the railroad track. The seventh count charged that the track was covered with a dense fog and that defendant negligently ran said train without any headlight burning on its locomotive, contrary to a rule of defendant requiring headlights to be lighted when running in a fog. The eighth count charged that the defendant negligently ran its train without ringing a bell and sounding a whistle, in violation of a rule of the company requiring the engine bell to be rung on approaching a whistling post at every public road crossing at grade and to be kept ringing until the crossing is passed and requiring the engine whistle to be sounded at all whistling posts. Defendant pleaded the general issue, and there was a jury trial and a verdict and a judgment for plaintiff for $4,500, from which defendant prosecutes this appeal.

Thomson was a section hand on a section of the railway which included its double track between the villages of Galt and Rock Island Junction and some distance east of Galt and west of the junction. The foreman and all the section men except Thomson lived at Galt, and the section gang started from Galt each morning. Thomson lived at the junction, about two and one-half miles west of Galt, and by an arrangement with his foreman his time began when he started from the junction at 7 A. M., which was the time the rest of the gang went to work. It was his duty to walk east towards Galt till he met or overtook the rest of the section gang, and while so doing his work was to watch the tracks and see if anything was out of order.

The railroad runs substantially east and west at this locality. On September 8, 1904, Thomson left the junction at 7 A. M., and proceeded east along the track. Just west of Galt a north and south highway crosses the railway. On that morning the section gang went to work 300 or 400 feet west of that highway crossing, cutting weeds and grass on the right-of-way. Between Sterling on the east and the junction, these tracks were also used by trains of the Chicago, Burlington & Quincy Railway Company, which will hereinafter be called the Burlington. About 7:35 A. M., a Burlington freight train passed west through Galt on the south track at a speed of twenty or twenty-five miles per hour. There was a very heavy fog and the smoke of the Burlington engine settled down by the side of that train over the north track. There was a whistling post 1317.6 feet west of the highway. Some distance east of the whistling post the engineer of the freight train saw Thomson walking east on the north track, which was the track used by eastbound trains. It is surmised that when Thomson left the junction, he walked east on the south track used by westbound trains, because that was the safer and usual course, but we do not find any proof that anyone saw him or knew on what track he walked until he was seen by the Burlington engineer. If he had been walking on the south track, he had discovered the approaching Burlington train and stepped over on the north track before the Burlington engineer saw him. The Burlington engineer knew and recognized Thomson. Almost immediately afterwards, and near the whistling post, the Burlington engineer met a Northwestern fast mail train going east on the north track. It was three hours and twelve minutes late, was running at its usual speed of sixty miles per hour and was not making up any time. That train struck and killed Thomson, probably about opposite the middle of the freight train. His dinner pail was found 930.2 feet west of the highway and he was no doubt

struck at that place. His body was found nearly 100 feet further east. The proof showed that section men are required to look out for all trains running on their section, including regular trains on time and behind time, and extras and specials. No notice is given them that regular trains are behind time or that extras or specials are coming from either direction, nor do the foremen or the men ask for such information when at the station. The section men, under the regulations prevailing on this road at that time, were required to look out for themselves and for trains in all directions at all times. This proof is uncontradicted, and it is manifest that the commercial needs of the country would not be answered by a railroad on which trains were required to look out for all men working on and about the track and to run slowly enough and have trains under such control as to avoid injuring them if they get on the track in front of an advancing train.

The only possible ground on which it can plausibly be contended that defendant is liable under the facts shown by this record is, that Thomson was struck east of the whistling post; that the statute required a bell to be rung or a whistle sounded from the whistling post to the highway; that a rule of the company required the whistle to be sounded at all whistling posts and the engine bell to be rung on approaching such whistling post; that another rule of the company required the headlight on the engine to be kept lighted when fog rendered it necessary; that employes at work on the road between such whistling post and the highway have a right to rely upon the giving of these signals; that these signals were not given at that time, and that in consequence of that failure Thomson lost his life. Defendant contends that these regulations are only for the benefit of travelers upon the highway and relies upon Williams v. C. & A. R. R. Co., 135 Ill. 491; C. & A. R. R. Co. v. Sanders, 154 Ill. 531; C., C., C. & St. L. Ry. Co. v. Halbert, 179 Ill. 196; W. Chi. St. R. R.

Co. v. Tuerk, 193 Ill. 385; and certain Appellate Court decisions. Without discussing these cases to show that they differ in principle from the one before us, we think it sufficient to say that we consider it the settled law of this state that workmen upon a railroad have a right to expect that the master and its other servants operating trains will obey the statute and the rules of the company and will give signals and warnings as required by the statute and such rules. I. C. R. R. Co. v. Gilbert, 157 Ill. 354; St. L., A. & T. H. R. R. Co. v. Eggmann, 161 Ill. 155; E. St. L. Ry. Co. v. Eggmann, 170 Ill. 538; C. & A. R. R. Co. v. Kelly, 182 Ill. 267; C. & A. R. R. Co. v. Eaton, 194 Ill. 441; Otstot v. I. I. & I. R. R. Co., 103 Ill. App. 136; I. I. & I. R. R. Co. v. Otstot, 113 Ill. App. 37. There seems to us to be a clear preponderance of the proof that the bell was ringing continuously by automatic action and that the headlight was burning. The proof on the question whether the whistle was blown at the whistling post was so conflicting that it may be the conclusion of the jury thereon, approved by the trial judge, ought not to be disturbed by this court.

But the question remains, were the jury warranted in finding, as they must have done to warrant their verdict, that Thomson was exercising due care for his own safety, and that the violation of the statute and the rules, if they were violated, caused his death? Thomson was of full age, in the possession of his faculties, was familiar with work on the section and with the dangers of railroading, knew of the fog and its density and must be presumed to have known that the smoke from the freight train settled upon the north track. When he went east on that track he knew that it was the track upon which all eastbound trains traveled, and that if any train came over that track it would come from behind him. He must have known that if it displayed a headlight in the fog he would be unable to see it, both because it would be behind him,

and also because the fog was so dense that, according to plaintiff's witnesses, a headlight could be seen no further than any other object, and an object could not be seen further than fifty to one hundred feet according to most of the witnesses, and not to exceeding two hundred feet at the highest estimate. The proof shows that there were frequently extras and specials passing over the road and trains behind time. The proof already referred to shows that he knew that no notice would be given the men on the section that any such trains were passing over the road, but they were required to depend upon their own faculties to ascertain the approach of all trains and to keep out of their way. Sixty miles per hour was the regular rate of speed of this fast mail, or eighty-eight feet per second. Thomson was struck 387.4 feet east of the whistling post. The train, therefore, traveled the distance from the whistling post to where it struck Thomson in four and four-tenths seconds. The freight train was running from twenty to twenty-five miles per hour and the noise of that train was likely to drown the noise and the signals of any train approaching from the rear, and he, as a man experienced in railroading, must have known that fact. About 1,600 feet back of where the train struck Thomson it passed over a bridge about 150 feet long, crossing a stream called the Elkhorn river. It is common knowledge that a fast train makes much more noise or that its sound is heard much further when crossing a bridge elevated over a stream than when running upon the level ground. The sound of this train upon the bridge was heard by others, but apparently not by Thomson, for in the eighteen seconds which it took that train to run the distance from the bridge to Thomson, he might have got off the track if he had acted promptly. It seems to us clear that no reasonable mind could conclude that a man with the knowledge Thomson had and with the fog then prevailing, and in the smoke and noise of the passing

600 APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Lehigh Valley Trans. Co. v. Post Sugar Co.

freight train, could go upon that north track and walk in the same direction trains thereon ran and rely upon the ringing of a bell or the sounding of a whistle at a point less than four and one-half seconds back of him, or rely upon the display of a headlight back of him, and be in the exercise of ordinary care for his own safety. In our judgment the only conclusion to be drawn from this testimony is that Thomson did not exercise ordinary care for his own safety, that his unfortunate death was due entirely to his own great carelessness, and that therefore his administratrix has no cause of action.

The judgment is, therefore, reversed.

*Reversed.*

Finding of facts to be incorporated in the judgment of the court:   We find that deceased at the time he was killed was not in the exercise of ordinary care for his own safety, and that he lost his life in consequence of his own negligence.