**H. G. Cook, Administrator, Appellee, v. Chicago, Rock Island & Pacific Railway Company, Appellant.**

**Gen. No. 5,210.**

1. APPEALS AND ERRORS—*when assignments waived.* Errors not argued are waived.

.2 INSTRUCTIONS—*what considered upon application for peremptory.* In determining a motion made by the defendant for a peremptory instruction, the trial court is not at liberty to weigh the evidence and to determine upon which side is the greater weight of the evidence but can only determine whether there is evidence fairly tending to make a case for the plaintiff.

3. INSTRUCTIONS—*when peremptory properly denied.* A motion for a peremptory instruction is properly denied if there is any evidence from which if it stood alone the jury could without acting unreasonably in the eye of the law find that the material averments of any one count of the declaration have been proved.

4. NEGLIGENCE—*when prima facie case established, because of violation of speed ordinance.* Where the train which caused the injury was running at a rate of speed which violated an ordinance of the city or village through which such train was passing, a *prima facie* case of negligence is established against the railroad company and the injury will be presumed to have been inflicted by the negligence of the company, and while such presumption may be rebutted, yet the question whether the evidence introduced by the company is sufficient under all the circumstances to overcome such *prima facie* proof of negligence, is a question of fact for the jury.

5. ORDINARY CARE—*when instinct of self-preservation may be considered, notwithstanding there was an eye-witness to the accident which resulted in death.* Unless the eye-witness to the accident which resulted in the death of the plaintiff's intestate not only saw

the deceased just at the minute of the injury but can describe his conduct just prior to the accident, the jury are entitled to consider in connection with the other circumstances surrounding the accident, the natural instincts prompting to the preservation of life and to the avoidance of injury, etc.

WILLIS, J. dissenting.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of La Salle county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910.

M. L. BELL and WILLIAM D. FULLERTON, for appellant; BENJAMIN S. CABLE, of counsel.

McDOUGALL, CHAPMAN & BAYNE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Stephen Pollasiak, a section hand in the employ of the Chicago, Rock Island & Pacific Railway Company, was struck and killed while at work about 8:30 P. M. of December 16, 1904, by the Rocky Mountain Limited, a westbound train, within the city limits of the city of Peru. He left a widow and several children, for whose benefit this suit was brought by the administrator of his estate to recover damages for the injury to their means of support. Each count of the declaration charged that deceased was in the exercise of due care for his own safety. The first count charged that the death was caused by the negligence and improper conduct of the defendant in carelessly and improperly driving said train. The second count charged a viola-. tion of the statutory duty to ring a bell and sound a whistle at eighty rods before reaching a public crossing. The third count charged that defendant drove said train through said city at an unreasonable and unsafe rate of speed. The fourth count charged that the section boss negligently ordered deceased to the place where he was killed and to do the work in which he was then engaged, and negligently failed to inform him of the danger attending the work or of the fre-

quency of the passing of the trains there or that any trains would pass while he was in the performance of that work. The fifth count charged the violation of an ordinance of said city, prohibiting trains from running at that place at a rate of more than ten miles per hour. The sixth count charged a violation of an ordinance of said city, requiring a bell to be rung continuously upon every locomotive engine while running in said city. There was a plea of not guilty and a trial, and a verdict and a judgment for plaintiff for $2,500. Defendant below appeals.

The cities of La Salle and Peru join each other. Appellant's depot at Peru is over a mile west of its depot at La Salle. At the depot at Peru the track is substantially east and west. Just west of the Peru depot is the section house where the lanterns and other appliances, used by the section men, are kept. Just east of the Peru depot is Plain street, running north and south. The next railroad crossing east of Plain street is East street, two or more blocks further east. Some considerable distance east of Plain street, on the north side of the main tracks, is a brewery. Going east from Plain street, on the north main track, there were two switches connected therewith, the one nearest Plain street being known as the freight house switch, and the second, about fifty feet further east, being known as the brewery switch. The freight house switch stand was about 150 feet west of the brewery. Pollasiak was a member of the section gang and worked daytimes; his day's work ended between 5 and 6 o'clock P. M. He had worked all day on the day in question and had retired and was asleep when, at 8 o'clock or a little later, the section foreman, Bolton, came to his boarding house and ordered him out to sweep the snow from the switches. He got up and went with the foreman to the section house. It was then snowing hard. The foreman gave him a lantern and a broom and directed him to go east and sweep the snow from the switches. This was about 8:25 P. M. The Rocky Mountain Limited, a passenger train which

was not scheduled to stop at either La Salle or Peru, was due to pass Peru at 8:05 P. M. Westbound trains run on the north main track, upon which Pollasiak was directed to sweep the snow at the switches. That train had not passed when the foreman started Pollasiak east, and the foreman knew that fact. There is nothing to show that Pollasiak knew that the train had not gone west. There was also a fast train eastbound, due at about the same time, which had not passed. The foreman did not inform Pollasiak that these trains had not passed. About five minutes after Pollasiak left the section house the foreman heard several sharp whistles from the Rocky Mountain Limited, which were given just as the engine struck Pollasiak or instantly before striking him. Whether he was at the freight house switch at work or walking on the track east of the switch is a controverted question of fact. He was struck by the engine and thrown against the 100 mile post standing about fifty feet west of the freight house switch, and was instantly killed.

Appellant assigns eighteen errors, but in its brief and argument says that the errors complained of are (1) the refusal of the court to direct a verdict for the appellant, (a) because the evidence shows no negligence on the part of the appellant, and (b) because the evidence fails to show due care on the part of the deceased; and (2) the refusal of the court to give the fifteenth instruction, requested by appellant. By limiting its brief and argument to these errors, appellant has waived all other errors assigned.

In considering the error alleged in refusing to direct a verdict for appellant on account of lack of proof, either of negligence by appellant or of due care by deceased, it is to be remembered that in deciding such a motion the trial court is not at liberty to weigh the evidence and to determine upon which side is the greater weight of the evidence, but can only determine whether there is evidence fairly tending to make a case for the appellee. If there is any evidence from which,

if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that the material averments of any one count of the declaration have been proved, then it is the duty of the trial judge to deny the motion to direct a verdict, although he may be of the opinion that there is such a preponderance of the evidence in favor of the defendant that if the plaintiff recovers a new trial must be awarded. Libby, McNeill & Libby v. Cook, 222 Ill. 206.

There was in evidence an ordinance of the city of Peru requiring a locomotive bell to be rung continuously while such locomotive is in motion in said city; and the statute required a bell to be rung or a whistle to be sounded as the train approached Plain street. Various witnesses, located at different places in that neighborhood and who knew that the train was coming, heard no bell rung and no whistle sounded, until the sharp whistles were given just at the time Pollasiak was struck. This was evidence fairly tending to show that the bell was not rung nor the whistle sounded till that instant. The engineer testified that the bell was rung automatically by compressed air and that it was ringing all the time while they passed through the cities of La Salle and Peru till the train stopped after striking Pollasiak, and that he blew the whistle at a distance of about 2,000 feet from the Peru depot, and that he gave a crossing whistle as he approached Plain street, and before he gave the sharp whistles at the instant of striking Pollasiak. Other witnesses testified that they heard the whistle and the bell. The jury might well have found upon this conflicting evidence that the positive testimony was the more worthy of belief and that the whistle was sounded and the bell was rung. But we are of opinion that the court, on the motion to direct a verdict, was not at liberty to weigh this conflicting testimony, and to decide that motion upon a finding that the preponderance of the evidence showed that the whistle was sounded and that the bell was rung.

But there is uncontradicted evidence that appellant

was negligent in another respect. The ordinance limited the speed of the train to ten miles per hour. Appellee's proof was that the train was running at from twenty to thirty miles per hour. The engineer testified that he was running at from fifteen to eighteen miles per hour and that the scheduled time for his train from the La Salle depot to the Peru depot, a distance of over a mile, was three minutes, or more than twenty miles per hour. The train was more than fifteen minutes late, and the jury might have reasonably believed that the engineer was trying to make up time, and that the estimate of thirty miles per hour was most nearly correct. Section 24 of the act in relation to fencing and operating railroads (Hurd's R. S., 1905, p. 1581) provides that when any railroad corporation shall run any train at a greater rate of speed through the limits of any city than is permitted by any ordinance of said city, the railroad corporation shall be liable for all damages done to person or property by such train, "and the same shall be presumed to have been done by the negligence of said corporation." This statute has been applied and enforced in C. & E. I. R. R. Co. v. Crose, 214 Ill. 602; Winn v. C., C., C. & St. L. Ry. Co., 239 Ill. 132, 141, and in other cases, and it is held there that where the train which caused the injury was running at a rate of speed which violated the ordinance, a *prima facie* case of negligence was established against the railroad company, and that the injury must be presumed to have been inflicted by the negligence of the company, and while that presumption could be rebutted, yet the question whether the evidence introduced by the company was sufficient under all the circumstances to overcome the *prima facie* proof of negligence was a question of fact for the jury.

The next question is whether there was such a lack of evidence of due care by deceased, or such proof of a lack of due care by him, that the court ought to have directed a verdict for appellant. The engineer in

charge of that train testified that as he entered upon the stretch of track between East and Plain streets, he saw a man with a white lantern walking between the east and westbound tracks 600 or 700 feet away; that this man walked within twenty or twenty-five feet of the engine and then stepped over to the westbound track in front of his train; that the engineer gave the alarm whistle just as the man stepped over, and that the engine struck him and threw him to one side. The engineer then stopped the train and went back to where deceased was lying. He testified that when he first saw this man the latter was in the range of the headlight, and that he, the witness, did not take his eyes off of the man from the time that he first saw him until the man stepped over to the westbound track, and that when he got close enough for the witness to see deceased the latter had his lantern on his arm and was putting on mittens or gloves; that the light on the locomotive was an electric light and was thrown straight ahead, and that deceased was walking very slowly. If this evidence is entirely true, then the court would have been warranted in holding that the jury could not reasonably find that Pollasiak was in the exercise of due care for his own safety, but must find that he was grossly negligent in stepping immediately in front of a coming train with an electric headlight illuminating the place where he stood. Appellant claims that this evidence is uncontradicted. We are of opinion that there is evidence in the record from which the jury might have grave doubt of the accuracy of the engineer's recollection. When people thereabouts came to the place where the accident occurred, they found a lighted lantern standing by the switch stand which Pollasiak had been cleaning, and a broom lying near where his body was. If Pollasiak had been struck and thrown while carrying a lantern on his arm, the light certainly would have been extinguished and the lantern would have either been found on his arm or would have been lying somewhere between the place

where he was struck and the place where his body lay, and it is extremely probable that it would have been broken. The accident could not have detached the lamp from the arm of deceased and set it upright and burning and unbroken by the side of the switch stand. There was no proof that any such broken or extinguished lantern was found thereabouts. There was no proof that the lantern standing by the switch stand was in use by any other employe of the company. We understand the proof to show by two witnesses that the task of sweeping out the snow at the freight house switch had not been completed when the witnesses arrived at the scene of the accident. The reasonable inference from all the testimony is that when Pollasiak arrived at this switch, he set his lantern down by the switch stand and began the work of sweeping the snow out of the switch, and that he was still engaged in that work and had not taken up his lantern to move on to the next switch stand when he was struck by this train. The brewery was situated in such a position that the Peru depot and the place where this switch stand was could not be seen by the engineer all the way from the La Salle depot, nor could a man at the switch stand see an approaching train all the way from the La Salle depot, but the engine came around a curve near the brewery and could only be in sight from the switch stand, for a distance variously estimated at from 450 to 650 feet. As the engine came around that curve the electric light, which shone straight ahead, would first be thrown on a point south of the main tracks and then would reach the south main track, which was the eastbound track, and lastly, as the engine straightened out upon the run, it would shine down the track upon which the train was running. Hodder, the engineer of the Peru accommodation, whose run ended at Peru, had arrived shortly before this and had put his engine in the roundhouse and was walking home along the eastbound or south main track, and passed Pollasiak shortly before the accident. The engineer says noth-

ing about seeing this second man, and yet as the headlight from his engine moved to the north as he came around the curve Hodder must have first come in the range of his vision in the line of the light before the light reached to the north track. If the engineer had been looking as intently as he now testifies he must have seen both of these men and he must have seen Hodder first. It may be that the true explanation of this apparent contradiction is that the engineer first saw Hodder and afterwards saw Pollasiak on the track in front of him at the switch just before he struck him, and did not realize that he had seen two men. Be that as it may, the trial judge would not have been warranted in deciding, on the motion to take the case from the jury, that Pollasiak was in fact walking towards the train at the time he was struck.

Appellee contends that in passing upon the question whether deceased was exercising due care or whether the proof is such on that subject that the court should have directed a verdict for appellant, it is an important consideration that deceased had a right to assume that appellant would obey the ordinance limiting the speed of the train to ten miles per hour, and that in fact this train was run two or three times as fast as the ordinance permitted; and that it was a question for the jury whether he would not have got safely out of the way if, after the train rounded the curve by the brewery and its headlight was turned on the track where deceased was at work, it had run only ten miles per hour. In I. C. R. R. Co. v. Gilbert, 157 Ill. 354, an administrator sought to recover for the death of an employe killed while crossing the tracks at a place which was not a public highway, and based the right of recovery upon proof that the engine which killed the deceased did not ring a bell as required by an ordinance of the city of Chicago. Defendant claimed that the ordinance had no application to the relations between the railroad company and its employe on the right of way and not at a public crossing. On that

point the court said: "An ordinance requiring the ringing of a bell on an engine running within the limits of a city would not be an unreasonable requirement, and a compliance therewith would tend to give notice of the approach of an engine on the track, and notice of its approach would tend to the protection of persons on or crossing such track.   *   *   *   The city having the right to adopt the ordinance, whoever would be benefited by a compliance therewith on the part of the company would be entitled to the protection that obedience to the law would furnish, whether an employe or not." In St. L. A. & T. H.R. R. Co. v. Eggmann, 161 Ill. 155, the action was based upon the alleged violation of an ordinance of the city of East St. Louis prohibiting the running of passenger trains at a speed exceeding ten miles per hour and another ordinance requiring a bell on every locomotive engine to be continuously rung while the engine was running upon any track in that city, and upon the death of an employe as the result of such violation. It is argued that the ordinances did not apply to that case where an employe was injured while working in the yards of the railroad company.    It was held that they did so apply.    In St. Louis Ry. Co. v. Eggmann, 170 Ill. 538, the Supreme Court was urged to overrule the foregoing decisions, it being argued that the ordinances of the city of East St. Louis there involved, similar to the ordinances in the case in 161 Ill., were only intended to protect the public against the danger of moving locomotives and trains at public places and could have no legal application to cases between the railroad company and its employes relating to injuries inflicted by engines on the private grounds of the railroad company. The court gave due consideration to these arguments and adhered to its former rulings, and said: "The power of the municipality to pass the ordinance, as reasonably tending to protect persons against injury, is not seriously questioned, and we can see no good reason for holding that a person should be de-

prived of that protection merely because he is at the time an employe of the company, working in its yards or other private grounds." Deceased therefore had a right to expect that this train would be run at a speed not exceeding ten miles per hour. If the distance at which the train could be seen from that switch was as stated by appellee's witnesses and if the train was running at the speed they stated, then Pollasiak would have had about ten seconds to get off of the track and out of the way after the electric headlight shone on the spot where he was, while he would have had at least a half a minute to get out of the way if the ordinance had been obeyed. As said in Dukeman v. C., C., C. & St. L. R. R. Co., 237 Ill. 104: "The deceased had a right to presume that appellant would not run its train in violation of the ordinance of the city, and contributory negligence could not be imputed to her for a failure to anticipate that appellant would approach this crossing at a rate of speed prohibited by the ordinance. In connection with the other circumstances surrounding the accident, the natural instincts prompting to the preservation of life and to the avoidance of injury, and consequent suffering and pain, may also enter into the consideration of the jury in determining the question of the due care of the deceased. (Chicago & Eastern Illinois Railroad Co. v. Beaver, 199 Ill. 34.) We are not prepared to say, as a matter of law, that the deceased was guilty of such contributory negligence as to preclude a recovery. We think this question was properly submitted to the jury as one of fact." If it be said that the rule that, in determining whether deceased exercised due care, the natural instincts prompting to the preservation of life and the avoidance of injury, suffering and pain, may be considered, should not apply where there was an eye witness, and that the engineer was an eye witness in this case, yet we think it very doubtful whether the engineer saw Pollasiak, at least till just before he struck him; and we are of opinion that the exception just

mentioned must refer to an eye witness who not only saw the deceased just at the instant of the injury, but who can describe the conduct of the deceased just prior to the accident. D. R. I. & N. W. Ry. v. De Yaeger, 112 Ill. App. 537.

But appellant contends that though such an ordinance may be ordinarily for the protection of an employe of a railroad company working on its tracks, yet that here Pollasiak knew that this train was scheduled habitually to violate this ordinance, and because he knew that fact he was not entitled to the protection of this ordinance. There is no proof that Pollasiak knew that this train was scheduled to run faster than ten miles per hour between the La Salle depot and the Peru depot. But appellant says that it was his duty to know generally concerning the movements of trains, and he must be presumed to have known that fact. Pollasiak worked day times and not nights. His day was up at 5 or 6 o'clock P. M. There is no proof that he had worked nights, except that he was at work the night before this accident; and as to that night there is no proof at what hour he was called out nor that it was when or before this train went west. He was in bed and asleep on the night in question when this train should have passed. There was no proof that he had ever been at the railroad when it went by. As this train was not scheduled to stop at either La Salle or Peru, there can be no presumption that its time at each depot was given on the time tables, or that Pollasiak, an Austrian fifteen months in this country, could read English and could know what the time table or any other printed schedule told. There is no proof that any other train run through Peru by appellant was scheduled to violate this ordinance habitually. We do not think that the proof justified either court or jury in finding that Pollasiak knew that this particular train was required by appellant to violate this ordinance habitually. It is also to be remembered in passing on the due care of deceased that the time for

this train to go west and for another fast train to come east on the south track had both gone by, and that if Pollasiak knew the time of these trains, he would naturally presume that they had already passed, especially as the foreman said nothing to him about them. We are of opinion that the court was not warranted in instructing the jury to find for appellant on the ground that the evidence was so conclusive that Pollasiak was not in the exercise of due care that the jury could not reasonably find to the contrary. We are of opinion that the court properly submitted the questions of the negligence of appellant and of the due care of deceased to the jury.

Instruction No. 15, requested by appellant and refused, was framed to tell the jury among other things that "so far as Pollasiak was concerned, the defendant had a right to operate its trains at any speed it saw fit provided only that such speed did not unnecessarily endanger Pollasiak while in the discharge of his duties." The part of the instruction above quoted is not a correct statement of the law, for the reasons already stated, and the court therefore properly refused it.

The foregoing considerations dispose of all the errors relied upon in appellant's brief and argument.

Appellant does not argue that the appellee's case was not supported by a preponderance of the evidence and that therefore the court erred in not granting a new trial, and we infer from its brief and argument that it does not desire to have us remand the cause for a new trial, for fear that the damages awarded may be heavier next time, but that it only desires a reversal if we shall decide that the trial judge ought to have instructed the jury for appellant and if we reverse the judgment with a finding of facts. We do not feel authorized to make such a finding.

The judgment is therefore affirmed.

*Affirmed.*

Dissenting opinion by Mr. Justice Willis.

Section 1 of an ordinance of the city of Peru, introduced in evidence by appellee, provided that no locomotive engine, railroad passenger car or freight car or railroad hand-car shall be driven, propelled or run upon or along any railroad track within the corporate limits of the city of Peru, and east of Ferry street therein, at a rate exceeding ten miles per hour. Section 5 of the same ordinance provided that the bell of each locomotive engine shall be rung continually while running within that city. The engineer of the train causing the accident testified that at the time Pollasiak was struck his train was running from fifteen to eighteen miles per hour, and thereby there is conclusively established a violation of Section 1 of the ordinance. Appellee introduced no direct proof as to whether or not the bell on the engine was rung in accordance with the requirements of the ordinance. John Majchrzak, who claims to have seen a passenger train pass through Peru the night of the accident, but which is not identified as the train which struck Pollasiak, testified that he did not hear any bell ring nor any whistle blow, neither did he know whether or not any headlight was burning on the engine. Louis Train, working in the engine room of the Cahill Coal Company on the south side of the railroad tracks that night, did not hear any bell ring, although he heard the rumble of the train before it came. He did not notice any headlight on the engine that night, although he came out of the engine room when he heard the alarm whistles and looked at the train. Edward Brady, who was in a saloon near the tracks at the time of the accident and who went to the scene when the train stopped, testified that the electric headlight was burning, but that he did not hear a bell ring and did not know whether it rang or not. He further testified that he could hear the rumble of the train as it approached, although he was in a building with the doors closed. In opposi-

tion to this purely negative testimony with regard to the ringing of the bell, appellant's witness, August Powell, the fireman on the train which struck the deceased, testified that the engine was equipped with a bell operated by an automatic air bell ringer; that the bell was ringing when the train passed through La Salle on the night in question; and that it continued to ring all the time until the train stopped in Peru. William Hodder, an engineer in the employ of appellant but not on duty at the time of this accident, was walking west on the south main track a little west of the Peru depot at the time the train here in question came from La Salle to Peru. He testified that the bell on the engine was ringing when the train stopped. C. W. Goodall, the engineer of the train that struck Pollasiak, testified that the bell on his engine was ringing when he passed La Salle that night and that it continued to ring until after he stopped at Peru.

Deceased had worked as a section hand in Peru and La Salle for considerably more than a year before he was killed. He had undoubtedly in that period of time become accustomed to doing every variety of work on the tracks belonging to appellant in that locality. He must be held to have become entirely cognizant of the fact that his occupation and the place in which he had to work was very dangerous and that trains of all kinds and of varying speeds were liable to pass the place where he was working at any time. Whether he had become sufficiently familiar with the time table of the company to know at what times the regular trains might be expected to pass him while at work or not, he had been working there long enough to know that trains were liable to pass at irregular intervals and at unexpected times and he must be charged with such knowledge. He may also be fairly presumed to have known that the work required of him in clearing switches at night in the midst of a snow storm was even more hazardous than his ordinary work performed in the day time, and he should have been even more careful while working at night and should have

been more than usually watchful for his own safety. Two witnesses for appellee, one of them inside of a building with the doors closed, testified that they could hear the rumble of this train as it approached the city of Peru. The engineer and fireman on the train both testified that, after they left La Salle, which is about one mile east of Peru, a crossing whistle, which consisted of two long and two short blasts, was blown for a highway crossing, a long blast of the whistle was blown for the city of Peru itself, and that later the series of short or alarm whistles was also blown. Hodder, who was walking west along the tracks when this train approached, also testified to hearing the same whistles. He further testified that he saw the reflection of the train headlight at La Salle as it shone around him on the snow. The witnesses, Train and Brady, had no reason for noticing the approach of that train on that night, and yet they testified that it was called to their attention by the rumble which it made. If these witnesses had the approach of this train brought to their attention, either by its rumbling noise, the reflection of its headlight, its whistle or its bell, it would appear that deceased must have failed to exercise due caution for his own safety or he would have known that the train was coming and would have stepped out of the way. If these witnesses noticed the approach of this train, when there was no reason shown for their being interested in its coming, the same noises or reflections should have told Pollasiak that he was in danger, if he had not been so absorbed in his work or in other things that he failed to pay attention to what was going on around him. The testimony of these witnesses makes it clear to me that had deceased been observing the care for his own safety required by the circumstances under which he was working, he would have known that a train was approaching and that he would be in danger if he stayed where he was. The intestate, on entering the service, impliedly undertook to observe all proper care for his own safety, without any warning against the

ordinary perils of his employment, and by his contract of hiring assumed the risk of injury from the ordinary dangers, which would include those known to him or discoverable by the exercise of ordinary care on his part. I. C. R. R. Co. v. Gilbert, 157 Ill. 354. While it is the settled rule in Illinois that a servant of a railroad company, though performing menial labor, like that of a section hand, whether in railroad yards or on private right of way, is entitled to all of the rights offered the public either by ordinance, statute, or general custom of the company, as held in Otstot v. I. I. & I. R. R. Co., 103 Ill. App. 136, and cases there cited, and appellant here was clearly guilty of a violation of the ordinance restricting the speed of trains while passing through the city of Peru, yet that fact alone will not render appellant liable in damages where the evidence shows that deceased was not exercising due care for his own safety. Pollasiak was of full age, in the possession of his faculties, was familiar with work on the section and with the dangers of railroading, knew that a train was liable to come along upon the track on which he was working at any moment and that his work was especially dangerous when performed at night, and, knowing these things, it was his duty to keep a vigilant lookout in the direction from which trains would come on the particular track on which he was working. If this train was running at the rate of fifteen miles per hour, it took it about four minutes to traverse the mile between La Salle and Peru. The evidence shows that the reflection of the headlight was seen in Peru while the train was still in La Salle, and that such headlight or its reflection could be seen all the time it was coming from La Salle to Peru, except for the short interval while the train was on the curve just east of the brewery. If deceased had looked east at any time during those four minutes, it is difficult to understand how he could have failed to notice the headlight of this train and have been warned thereby, to say nothing of the various whistles which were blown and of the rumbling noise caused by the

passage of the train. The section boss testified that section men, especially when working by themselves, were required to look out for themselves, but that, if the men were new at such work, the boss would take it upon himself to look out for that particular man until he had learned to take care of himself. Pollasiak was not a green hand at this kind of work and must be considered to have known that he was expected to look out for himself, and to depend upon his own faculties to ascertain the approach of all trains and to keep out of their way. C. & N. W. Ry. Co. v. Thomson, 128 Ill. App. 594. It seems to me clear from this testimony that Pollasiak did not exercise due care for his own safety, that his death was due in a large measure to his own carelessness, and that appellee has no cause of action.