CASE 13.—ACTION BY ANTHONY A. LANG'S ADMINISTRA-
        TRIX AGAINST THE CHESAPEAKE & OHIO RAIL-
        WAY CO.—Oct. 26, 1909.

## Ch. & Ohio Ry. Co. v. Lang's Adm'x

Appeal from Mason Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

1.  Master and Servant—Injury to Servant—Negligence After Dis-
    covered Peril.—Direction to find a verdict for defendant in
    an action against a railroad company for the killing by a
    train of its section hand while riding by permission a ve-
    locipede on its track was properly refused; the evidence for
    plaintiff being that no warning of the approach of the train
    was given, that deceased was ignorant of its approach, and
    that it might have been checked, if not stopped, after he
    was seen by the engineer, in time to avoid the accident.
2.  Evidence—Opinions—Qualification of Witnesses.—Witnesses,
    while not knowing the engine or cars of a train, having run
    other trains, are competent to testify as to the distance
    within which such a train could be stopped.
3.  Master and Servant—Injury to Section Hand on Track—Lia-
    bility of Company.—The place on a railroad track where a sec-
    tion hand riding a velocipede by permission was struck by
    a train being outside the town, and where the presence of
    persons was not to be expected, the company was liable only
    in case there was negligence after his peril was discovered;
    it having been incumbent on him to keep a lookout for, and
    get out of the way of, trains.
4.  Trial—Instructions—Conformity to Evidence.—There being no
    evidence that the peril of a section hand on the track was dis-
    covered by any one except the engineer of the train which
    struck him, instructions as to "agents and servants" of the

Ch. & Ohio Ry. Co. v. Lang's Admx.

company in control and management of the train having discovered him, and not used proper care to prevent the injury, should use the word "engineer" in place of the words "agents and servants."

5. Master and Servant—Injury to Sectionman on Track—Care Required of Engineer.—The engineer of a train, on discovering the peril of a section hand on the track, was not bound to use the utmost diligence to prevent his injury, but only such care as might be reasonably expected of a person of ordinary prudence under the circumstances.

6. Master and Servant—Injury to Section Hand on Track—Duty of Engineer—Instructions.—In place of the words "promptly used all the means in his power" in the instruction, in an action against a railroad company for the killing of its section hand by its train, that if the train was being run by the engineer in an ordinarily careful and prudent manner, and, after discovering decedent's peril, he "promptly used all the means in his power" to prevent the accident, defendant was not liable, there should have been inserted the words "used ordinary care in the exercise of all reasonable means at his command consistent with the safety of the train."

7. Master and Servant—Injury to Section Hand—Liability Notwithstanding Servant's Negligence.—Though a section hand was guilty of negligence in going on the track with his velocipede knowing that a train was coming, the company was liable for his death from being struck by the train, if, after it discovered his peril, it did not exercise ordinary care to avoid injuring him.

8. Master and Servant—Injury to Servant—Assumption of Risk.—Where a section hand riding a velocipede on the track. knowing of the approach of the train, jumped off,and was safe from the train, and then trying to get his velocipede off the track when it was too late for those in charge of the train to do anything to avoid injuring him, was struck and killed by it, he assumed the risk, and the company was not liable, unless he had reason to believe the velocipede endangered the train, and he used such care as may be reasonably expected of a person of ordinary prudence situated as he was.

9. Pleading—Disjunctive Allegations—Injury to Servant—Negligence After Knowledge of Peril.—The allegation in the petition for death of a section hand struck by a train that the persons in charge of the train saw or could have seen by ordinary care his danger is only one that they could have seen, and does not involve one that they saw his peril.

WORTHINGTON, COCHRAN & BROWNING for appellant.

Ch. & Ohio Ry. Co. v. Lang's Admx.

## POINTS AND AUTHORITIES.

1. The demurrer to the petition of plaintiff should have been sustained. Reusch v. Licking Rolling Mill Co., 118 Ky. 369; 80 S. W. 1168; Heindrick v. Louisville Elevator Co., 92 S. W. 608; King v. Creekmore, 77 S. W. 689; Simons v. Gregory, 85 S. W. 751; Jacobs' Adm'r v. C. & O. Ry. Co., 72 S. W. 308; Louisville, H. & St. L. Ry. Co. v. Jolly's Adm'x, 90 S. W. 977; Dilas' Adm'r. v. C. & O. Ry. Co., 71 S. W. 492; Eastern Ky. Ry. Co. v. Fowell, 33 S. W. 629; Davis' Adm'r v. C. & O. Ry. Co., 116 Ky., 144; 75 S. W. 275; Gregory v. L. & N. R. R. Co., 79 S. W. 238; Gains & Co. v. Johnson, 105 S. W. 381.

2. The trial court should have peremptorily instructed the jury to find for defendant.

(a) Because no negligence upon the part of the defendant was shown which can be said to have been the proximate cause of the accident. Jacobs' Adm'r. v. C. & O. Ry. Co., supra; Louisville, H. & St. L. Ry. Co. v. Jolly's Adm'r. Supra; Mobile & Ohio Ry. Co. v. Dowdy's Adm'x., 91 S. W. 709; Dilas' Adm'r. v. C. & O. Ry. Co. supra; Eastern Ky. Ry. Co. v. Powell, supra; 3 Elliott on Railroads, Sec. 1298; Illinois Central R. R. Co. v. Murphy's Adm'r., 97 S. W. 729; L. & N. R. R. Co. v. Redmon's Adm'r., 91 S. W. 722; C. & O. Ry. Co. v. Nipp's Adm'r., 100 S. W. 246; L. & N. R. R. Co. v. Lowe's Adm'r., 118 Ky. 260; Illinois Central R. R. Co. v. Tyson's Adm'x., 108 S. W. 863; Nashville, &c., Ry. Co. v. Bean's Ex'or., 110 S. W. 328; Cummings v. Illinois Central R. R. Co., 110 S. W. 809; Gregory v. L. & N. R. R. Co., supra; Edwards' Adm'r. v. C. & O. Ry. Co., 108 S. W. 303; Illinois Central R. R. Co. v. Willis' Adm'r., 97 S. W. 21; L. & N. R. R. Co. v. Taafe's Adm'r., 50 S. W. 850; Helm v. L. & N. R. R. Co., 33 S. W. 396; Gresham's Adm'r. v. L. & N. R. R. Co., 24 S. W. 869; L. & N. R. R. Co. v. Penrod, 56 S. W. 1.

(b) Because of the contributory negligence of plaintiff intestate. Dilas' Adm'r v. C. & O. Ry. Co., supra; Jacobs' Adm'r v. C. & O. Ry. Co., supra; Louisville, H. & St. L. Ry. Co. v. Jolly's Adm'x., supra; Long's Adm'r v. Illinois Central R. R. Co., 68 S. W. 1094; 113 Ky. 806; Illinois Central R. R. Co. v. McIntosh, 80 S. W. 496; 118 Ky. 145; Goodlet v. L. & N. R. R. Co., 122 U. S. 1391; Nelling v. Chicago, &c., Ry. Co. (Iowa), 67 N. W. 404; Wright v. Southern Ry. Co., 80 Fed. 260.

3. The trial court erred in giving certain instructions and in refusing others. Hovius v. C., N. O. & T. P. Ry. Co., 107 S. W. 214; Flint v. Illinois Central R. R. Co., 88 S. W. 1055; Wilmurth's Adm'r. v. Illinois Central R. R. Co., 76 S. W. 193; L. & N. R. R. Co. v. Brown, 107 S. W. 321; C. & O. Ry. Co. v. Crank, 108 S. W. 276; L. & N. R. R. Co. v. King's Adm'r., 115 S. W. 196; L. & N. R. R. Co. v. Harrod, 115 Ky., 377; 75 S. W. 233.

THOMAS D. SLATTERY for appellee.

## AUTHORITIES.

1. On the proposition that demurrer to petition was properly overruled, and the action of the court thereon will not now avail appellant.  2 Chitty on Pleadings, 650; Childs v. Drake, 2 Met. 149; L. C. & L. R. R. Co. v. Cases' Adm'r., 9 Bush 732; L. & N. R. R. Co. v. Mitchell, 87 Ky. 334; Fagg's Adm'r. v. L. & N. R. R. Co., 111 Ky. 30; L. & N. R. R. Co. v. Wolfe, 80 Ky. 82; Connell v. C. & O. Ry. Co., 22 Ky. Law Rep. 501; Lowe v. Miller, 104 S. W. 257; Duncan v. Brown, 15 Ben. Mon. 197; Western Assurance Co. v. Ray, &c., 105 Ky. 523; Bently v. Bustard, 16 B. Monroe, 690; Daniel v. Holland, 4 J. J. Mar. 18; Drake's Adm'r. v. Semonin, 82 Ky. 291; Hill v. Ragland, &c., 114 Ky. 209; C. & O. Ry. Co. v. Thieman, 96 Ky. 507; Drakesboro Coal, Coke & Mining Co. v. Jeonegan, 99 S. W. 235; Harmon v. Thompson, 27 Ky. Law Rep. 181; L. & N. R. R. Co. v. Daulton, 113 S. W. 842.

2. On the proposition that the court did not err in refusing to instruct the jury peremptorily to find for defendant.  Wilmurth's Adm'r. v. Ill Central R. Co., 76 S. W. 193; Newport News, &c. v. Deuser, 97 Ky. 94; I. C. R. R. Co. v. Hocker, 55 S. W. 438; L. & N. R. R. Co. v. Tinkham's Adm'r., 44 S. W. 439; Wren v. L. St. L. & T. Ry. Co., 14 Ky. Law Rep. 324.

3. On the proposition that defendant owed plaintiff's intestate a lookout duty.  Thompson on Negligence, Vol. 4, Sec. 4478; 2 Thompson on Negligence, Sec. 1839; Thompson on Negligence, Vol. 2, Sec. 1735; Hammill v. L. & N. R. R. Co., 93 Ky. 343; L. & R. R. Co. v. Lowe, 118 Ky. 260; Shelby's Adm'r. v. Cin., New Orleans & T. P. R. R. Co., 85 Ky. 229; L. & N. R. R. Co. v. Creighton, 106 Ky. 42; L. & N. R. R. Co. v. Seibert's Adm'r., 21 Ky. Law Rep. 1603; Cin., N. O. & T. P. Ry. Co. v. Hill, 89 S. W. 523; Cason's Adm'r. v. C. C. & C. E. R. & T. & B. Co., 93 S. W. 19; Perkins v. C. & O. Ry. Co., 94 S. W. 636; Davis v. Louisville H. & St. L. Ry. Co., 97 S. W. 1122.

The following cases cited by appellant distinguish from the case at bar: Eastern Ky. Ry. Co. v. Powell, 33 S. W. 629; Dilas' Adm'r. v. Chesapeake & Ohio Ry. Co., 71 S. W. 492; Louisville & Henderson & St. Louis Ry. Co. v. Jolly's Adm'r., 90 S. W. 977; Jacobs' Adm'r. v. C. & O. Ry. Co., 72 S. W. 308.

4. The question of contributory negligence was properly left to the jury.  L. & N. R. R. Co. v. Lowe, 118 Ky. 260; Young v. I. C. R. R. Co., 24 Ky. Law Rep. 789.

5 Appellant was not prejudiced by the instructions given in this case.  Southern Ry. Co. in Kentucky v. Otis' Adm'r., 25 Ky. Law Rep. 1686; Young v. I. C. R. R. Co., 24 Ky. Law Rep. 789; Childs v. Jones, 7 Dana, 540; Lynch v. Sanders, 9 Dana, 59; L. & N. R. R. Co. v. Connelly, 9 Ky. Law Rep. 993; Sims v. Reed, 12 B. Monroe 51; Sears' Adm'r. v. L. & N. R. R. Co., 22 Ky. Law Rep. 152.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Anthony A. Lang was a section hand in the service of the Chesapeake & Ohio Railway Company. It was a part of his duty to act as track walker between South Ripley and Dover, a distance of about six miles. One of his duties was the lighting of the signal and switch lights between these points, and to save time he was allowed to use a velocipede. On December 19, 1905, he had been to South Ripley and was returning to Dover, where he lived. Just before the road reaches Dover it passes over a trestle. While Lang was going over this trestle, a rapidly moving passenger train came up behind him, knocking him off the track and killing him. This suit was brought by his personal representative to recover for his death, on the ground that those in charge of the engine and train perceived his danger and, after perceiving it, could by proper care have avoided killing him. There was a verdict and judgment in the plaintiff's favor for the amount sued for, $2,000, and the railroad company appeals.

One witness, who lived about 100 feet from the railroad track and about 800 feet east of the trestle, testied that he was sitting in his room, and saw Lang go by on the velocipede. He seemed to be going along very leisurely. The witness then got up and went into his kitchen, and just as he got into the kitchen he heard the whiz of the passenger train. He was uneasy about Lang, for he had seen him pass, so he stepped to the window to see if he had gotten across the bridge, and, as he reached the window, he saw him at the end of the bridge, and the witness could only see him half way across the bridge. The train was only about 100 feet behind decedent when the

witness last saw him. The train did not whistle or give any signal until after it had gotten beyond the bridge. Another witness testified that she lived just west of the bridge. She was tired and went to the window. She saw Lang going by, and watched him until he got about across the bridge. While she was standing there the train came along. She looked until it got close to him. She turned her eyes, and the train struck him. The window at which she was standing faced the bridge. She also testified that there was no whistle or ringing of the bell until after Lang was struck. Lang did not look back, so far as she saw. The train was an extra, consisting of an engine and three baggage cars, running at the rate of 45 or 50 miles an hour. There was proof on behalf of the plaintiff that it could have been stopped in 400 or 500 feet.

The conductor of the train testified that he was in the rear car, and that the engineer whistled and put on the emergency brakes on the curve before reaching the straight track approaching the trestle. The track was straight for about 800 feet east of the point where Lang was struck. The engineer testified that he was two or three rail lengths west of the distance signal when he first saw Lang. A rail length is 33 feet. The distance signal was 780 feet from the point where Lang was struck; so, according to his testimony, Lang was about 700 feet from him when he saw him. He said he saw Lang when he came around the curve into the straight track. The fireman was busy shoveling coal, and did not see him at all at that time. The engineer testified that he at once set his emergency brakes and blew the alarm whistle; that Lang was at about the end of the viaduct, and got off

the velocipede, and was trying to pull it from the track, when he was struck and killed.  The fireman testified that, after the alarm was given, he looked out and saw Lang trying to pull the velocipede from the track when he was struck.  On the other hand, the section hands who were working on the track a little below the trestle testified that no warning of the approach of the train was given until after Lang had been struck; and two persons walking east along the track, who passed Lang a short distance from the trestle, gave similar testimony.

It is insisted for the  defendant  that the court should have instructed the jury peremptorily to find for it; but we cannot concur in this conclusion.  If a signal of the approach of the train had been given, Lang might have protected himself by jumping from the velocipede.  The evidence for the plaintiff was that no warning of the approach of the train was given, and that Lang was struck when he was proceeding along in ignorance of the approach of a train behind him.  In addition to this, there was evidence tending to show that  the train  might  have  been checked, if not. stopped, in time to avert the catastrophe.  While the witnesses who testified for the plaintiff did not know this engine or these cars, they had run other trains and were competent to testify as to the distance  within  which such  a  train  could be stopped.  The evidence shows that Lang was seen by the engineer when he came around the curve into the straight track, and, if he had whistled then, Lang could, at least, have jumped from the velocipede.  It is true the testimony for the company is to the effect that the engineer did blow  the whistle then, but the great weight of the evidence is to the effect that no whistle was blown until after Lang had been struck

and the train was some feet west of the point at which the accident occurred.

The court gave the jury these instructions:

"(1) The court instructs the jury that if they believe from the evidence that the decedent, Anthony Lang, was on the 19th day of December, 1905, while riding on a velocipede on the track of defendant's railroad, killed by being run into by an engine of defendant as described in the proof, and if they further believe that at the time of such injury and killing he was upon the track in the usual course of his employment by said railroad company, and that the agents and servants of said railroad company in control and management of the train after discovering the peril of decedent, Lang, failed to use the utmost diligence to prevent his injury, then they will find for the plaintiff.

"(2) If the jury believe from the evidence that at the time of the killing of decedent, Lang, the train was being run by the agents and servants of the defendant railroad in an ordinarily careful and prudent manner, and that after the discovery of the decedent, Lang's, peril they promptly used all the means in their power to prevent the injury, then they will find for the defendant.

"(3) If the jury believe from the evidence that the decedent was himself guilty of such negligence that as without his negligence the injury would not have happened, notwithstanding the defendant may have been guilty of negligence, still the law is for the defendant and the jury will so find.

"(4) If the jury finds for the plaintiff, they should assess the damages at such sum as will fairly compensate the estate of the decedent for the destruction of his power to earn money, not to exceed,

however, the sum of $2,000, the amount claimed in the petition.

"(5) The jury are instructed that the rate of speed of defendant's train prior to the time its engineer saw the peril of Lang was not negligence. Defendant had the right to run its train at the speed that it was running."

The court did not err in telling the jury that the defendant was only responsible in case there was negligence after the peril of Lang was discovered. The point at which he was struck was one where the presence of persons on the track was not to be expected. It was outside of the town limits, and there was no reason why the presence of persons at this point should be anticipated. It is true Lang was not a trespasser. He had a right to be on the road with a velocipede; but it was incumbent on him to keep a lookout for trains and get out of their way. Those in charge of the train had no reason to anticipate his presence on the trestle, and were not required to keep a lookout for him. But they were required to exercise proper care to avoid injuring him after his peril was discovered. There was no evidence that his peril was discovered by any one but the engineer, and in instructions 1 and 2, in lieu of the words "agents and servants," the court should have used the word "engineer." The engineer was not required to use the utmost diligence to prevent his injury after he discovered his peril. He was required to exercise such care as might be reasonably expected of a person of ordinary prudence under the circumstances. The court, therefore, erred in telling the jury that the company was liable if the engineer failed to use the utmost diligence to prevent the injury.

In the second instruction, in lieu of the words "promptly used all the means in their power," the court should have inserted these words, "used ordinary care in the exercise of all reasonable means at his command consistent with the safety of the train." Hovius v. Cincinnati, etc., Ry. Co., 107 S. W. 214, 32 Ky. Law Rep. 786; Flint v. Illinois Central R. R. Co., 88 S. W. 1055, 28 Ky. Law Rep. 1.

The defendant introduced proof on the trial to the effect that Lang, before leaving the last station, received warning from the station master that this passenger train was coming, and it is insisted for the railroad company that, if he received this warning, he was guilty of negligence in going upon the track with his velocipede in front of the passenger train. But, although he was guilty of negligence in thus going upon the track, the defendant would still be liable if, after it discovered his peril, it did not exercise ordinary care to avoid injuring him; and, as the plaintiff cannot recover in any view of the case except for negligence after his peril was discovered, no instruction should be given based upon this evidence. There was proof for the defendant to the effect that Lang, after he knew of the approach of the train and after he had jumped from his tricycle and was safe from the train, lost his life in an effort to get his tricycle off the track. When he did this, it was too late for those in charge of the train to do anything more than they had already done to avoid injuring him; and, if with knowledge of the approaching train and when he was safe from it he thus put himself in danger in an effort to save the tricycle when it did not endanger the train, he cannot recover. The proof for the plaintiff does not sustain this view of the transaction, but it is supported by the proof for the

defendant. A person may lawfully imperil his life to protect the lives of the persons on a train. In lieu of the third instruction, the court will tell the jury that if they believe from the evidence that Lang jumped from the tricycle, and when he was at a point of safety, with knowledge of the approach of the train, he undertook to take the tricycle off the track and thus lost his life, he took the risk and the defendant is not liable, unless he had reason to believe the tricycle endangered the train, and he used such care as may be reasonably expected of a person of ordinary prudence situated as he was. Nelling v. Chicago, etc., Ry. Co., 98 Iowa, 554, 67 N. W. 404; Wright v. Southern Railway Co. (C. C.) 80 Fed. 260; Illinois Central v. Jackson, 65 S. W. 342, 23 Ky. Law Rep. 1405; Louisville & Nashville R. R. Co. v. Molloy's Adm'x, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; Barber v. Cincinnati, etc., R. R. Co., 21 S. W. 340, 14 Ky. Law Rep. 869; Becker v. Louisville & Nashville R. R. Co., 110 Ky. 474, 61 S. W. 997, 22 Ky. Law Rep. 1893, 53 L. R. A. 267, 96 Am. St. Rep. 459.

We see no other prejudicial error in the record. The petition is defective, in that it does not aver that those in charge of the train saw the peril of the deceased, and, after perceiving it, were negligent as therein alleged. The allegation that they saw or could have seen by ordinary care is only an allegation that they could have seen. On the return of the case the plaintiff may amend her petition.

Judgment reversed and cause remanded, with directions for a new trial consistent with this opinion.

Nunn, C. J., dissenting.