## Fields v. Louisville & Nashville Railroad Company.

(Decided March 19, 1915.)

### Appeal from Lee Circuit Court.

1. Railroads—Trespassers—Lookout Duty.—A person, who is not an employe of a railroad company, and who has no business with the railroad requiring him to do so, goes upon a bridge or high trestle of the railroad company, for his own convenience or pleasure, is a trespasser, and those operating the trains of the railroad company, owe him no lookout duty, and only owe him the humane duty of exercising ordinary care to prevent injury to him, after they have discovered his peril.

2. Railroads—Licenses—Acquiscence.—The mere acquiescence of the railroad company in the use of its bridges as a highway, by persons, does not give such persons the status of licensees, nor does the knowledge of such use by the railroad company make the persons so using the bridges licensees, but the law governing their rights under such circumstances is that which applies to trespassers.

3. Railroads—Trespassers.—The rule, which makes one, who for his own convenience or pleasure, uses the bridges and high trestles of a railroad company as a highway, a trespasser, is not an inhumane rule, but is designed to discourage people from exposing

themselves to such useless perils, and to encourage them to exercise ordinary care for their own safety.

J. M. McDANIEL for appellant.

WALLACE & HARRISS, BENJAMIN D. WARFIELD, G. W. GOURLEY and SAM HURST for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Elijah C. Fields, instituted this suit in the Lee Circuit Court against the Louisville & Nashville Railroad Company. The petition and two amended petitions filed by appellant, allege in substance, that about one year ago, the appellee constructed, in the "heart" of the City of Beattyville, which is a town of the fifth class, a bridge; that the bridge was twelve feet wide, with a solid floor, and that the railroad track of appellee, which passed over the bridge, was on a level grade, and at grade with the streets and houses of the city; and that the bridge was daily used as a passway by two hundred to five hundred people, and that its habitual use by the public as a passway was done with the knowledge and acquiescence of the appellee; that its use had been continued by the public, in the way described, for about twelve months theretofore, and the fact of its use in that way was well known to the appellee, its agents and servants in charge of its trains; and that the track of the road and bridge crossed at grade with the streets of the city; and that on the night of January 11th, 1913, the appellant was crossing the bridge in the dark, and the appellee, by and through its gross negligence, negligently backed an engine and tender over the bridge, while appellant was walking thereon, and forced him from the bridge, and that he was caused, thereby, to fall forty or fifty feet, breaking the bones of both legs, and injuring him otherwise. It was further alleged, that the appellee was careless and negligent in the operation of its engine; that the engine was not under control of the person having charge of it; and that no lights were displayed, nor any lookout had, nor any signals given; and that the engine was not properly manned and managed, and in fact the engineer and fireman had abandoned the engine; and that it had been placed in charge of an inexperienced and incompetent night watchman or ostler, and all of those things were well known to the appellee, but unknown to the appellant;

that appellant was injured at a place where the public was reasonably to be expected and anticipated; and that it was the duty of those in charge of the engine to give reasonable warning of its approach, by signals, and keep a reasonable lookout in the direction in which the engine and tender were moving, but that appellee's servants, by their gross negligence, wholly failed to do any of those things, and as the result of which, the appellant, while upon the bridge, was forced from it, and permanently injured, as above stated. Appellant, also, alleged, that in addition to the acts of negligence above stated, that the agents and servants of appellee in charge of the engine saw his peril, or by the exercise of ordinary care, could have seen him, and failed to use ordinary care to prevent his injuries, and sought a recovery of the appellee in the sum of $25,000.00. The appellee interposed a general demurrer to the petition and amended petitions, which the court having considered, sustained, and the appellant declining to plead further, adjudged that the petition as amended be dismissed. To the judgment of the court sustaining the demurrer, and dismissing the petition, the appellant excepted, and prayed an appeal to this court, which was granted.

The persons, for whom, those operating railroad trains are required to keep a lookout, and for whose benefit it is the duty of the railroad company to give warning of the approach of trains, and to operate the trains at a reasonable rate of speed, consist of two classes: those persons who use the tracks of the railroad company as a matter of right, compose one class; those who are licensed by the railroad to use its tracks, compose another class. Those operating the railroads are required to give a warning of the approach of the trains, and to operate them at a reasonable rate of speed, so that if any persons are discovered to be in peril, the trains may be stopped, and to keep a lookout, wherever the presence of persons, who use the tracks as a matter of right, or as licensees, must be anticipated. These places are at street crossings, and at points on the roads in cities, towns, and populous communities, where the public generally have been in the habit of using the tracks and right of way with the knowledge and consent of the railroad company. At such places, those operating railroad trains must keep a lookout for persons, who may be upon the tracks, and to give proper signals of their approach, and to take such precautions as the circum-

stances demand, in order to prevent injuries to and deaths of people. I. C. R. R. Co. v. Flaharty, 139 Ky., 150; L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408; I. C. R. R. Co. v. Murphy's Admr., 123 Ky., 787; L. & N. R. R. Co v. Veech, 129 Ky, 775; Shelby v. C. & O. Ry. Co., 85 Ky., 224; Connelly v. C., N. O. & T. P. Ry. Co., 89 Ky., 402.

The railroad companies are held to a strict observance of these requirements, and necessarily so, because in the traveled streets of the towns, where the railroad tracks run longitudinally upon or cross the streets, and upon the sidetracks, and other tracks of the railroad companies about depots, where the people are invited to come, and to use these tracks, for business with the railroad companies, and the street crossings, and other crossings where the people have a right to cross; if the communities are populous, from the number of persons passing, the danger to life is great, unless extreme precautions are taken by those operating the roads to prevent injury, and the law uniformly requires them, not only to give notice of their approach, and to keep a lookout, and to reduce the speed of trains, so that they may be under control, but to take such other precautions as the circumstances demand for the safety of such people. The persons who have a right to go upon the railroad track, and those licensed to do so, are required, when doing so to exercise ordinary care for their own safety. The persons, however, who are not in the employ of a railroad, and have no business to transact with a railroad company, and who voluntarily and for their own convenience, go upon the railroad tracks and right of way, or bridges of a railroad company, are denominated trespassers. This court has uniformly held, that where an individual goes upon the track of a railroad in the country, and not in a town or village, or populous community, that he is a trespasser, and that those operating the railroad trains owe him no duty, either to keep a lookout, or to regulate the speed of their trains, or to give any signals, or to take any precautions, whatever for his safety. The same rule has been held to apply to persons going upon the bridges built by the railroad companies, and used by them for the passage of their trains over streams, and a like rule has been held to apply to those who go upon high trestles, over which the tracks of a railroad company pass. It seems that one

who voluntarily, and for his own convenience, goes upon a bridge of a railroad, especially at night, when his presence could not be known, however good a lookout might be kept; and over which bridge, trains and engines of different kinds are liable to pass at any time, and the passing of them may always be reasonably expected; and where, from the narrowness of the bridge, the person going upon it cannot escape death or serious injury if an engine or train passes over it, and where he must certainly know, that his presence upon the bridge, when a train passes, must necessarily result in his death or great bodily injury; is conduct on his part, to say the least, which indicates a very great recklessness and disregard of his own life and safety.

In the case of Brown's Admr. v. L. & N. R. R. Co., 97 Ky., 228, Brown was walking upon the track of the railroad in the city of Louisville, and even in that state of case, he was held to be a trespasser, and for an injury from a passing train, which resulted in his death, the railroad company was held not to be responsible.

In the case of L. H. & St. L. R. R. Co. v. Woolfork, 30 R., 569, Woolfork, the injured person, was walking upon a railroad trestle, within the corporate limits of the city of Paducah, which had no footway plank, and was not intended to be used as a walking way although a great many people used it as a passway and traveled over it, this court held that he was a trespasser. In the opinion the court said: "When the company's track crosses the streets of cities, or town, at grade, or constitutes a part of the highway of municipalities, or thickly settled places, it owes the lookout duty, but not upon a trestle."

In the case of Prince v. I. C. R. R. Co., 30 R., 469, Prince went upon a narrow bridge of the railroad company in the town of Paducah. A freight train was backed down upon the bridge, and she was knocked off and injured. She was held to be a trespasser.

In the case of C. & O. Ry. Co. v. Barbour's Admr., 29 R., 339, Virgie Barbour went upon the bridge of the railroad, and was run over by a train and killed, and in that case, she was held to be a trespasser.

In the case of Smith's Admr. v. I. C. R. R. Co., 28 R., 723, Miss Johnnie Smith went upon the bridge of the railroad, and was run over and killed by a train. She was held to be simply a trespasser.

In the case of Flint v. I. C. R. R. Co., 28 R. I., Flint went upon a high trestle of the railroad, and was compelled to jump off to save himself, by reason of the approach of a train, and was seriously injured. This court held that he was a trespasser.

In the case of Curd's Admr. v. C., N. O. & T. P. Ry. Co., 163 Ky., 105, Curd went upon a high trestle on the railroad, and was killed by a train. He was held to be a trespasser, and, also, that a mere acquiescence by the railroad cannot be construed into a promise that its bridge might be used by foot passengers as a highway, so as to entitle them to a lookout duty or make them anything but trespassers.

In the case of Beiser v. C. & O. Ry. Co., 29 R., 249, Beiser went upon the railroad track in Covington, which was elevated above the streets. He was there injured by a passing train, and the court held that he was a trespasser.

In the case of C. & O. Ry. Co. v. Barbour's Admr., 29 supra, this court said: "The fact that a great many people trespass upon the bridge, and that the railroad acquiesced in this, without openly complaining, in no wise conferred upon the decedent, or the public, the legal right so to do.

In L. H. & St. L. R. R. Co. v. Woolfork, supra, it was held that people could not acquire the status of licensees by continuous trespassing, by traveling over the trestle, where Woolfork received his injury.

The law applying in this jurisdiction to persons who go upon railroad bridges, without invitation from the railroad authorities, and who are not employees of the railroad and have no business with the railroad, and who simply use the bridges for their convenience or pleasure, is that, which applies to trespassers. This is not an inhumane rule, but is one designed to save people from death and injury, by discouraging them from recklessly exposing themselves to such useless perils as going upon railroad bridges for their pleasure or convenience, when the roads and passways, which are designed and intended for their use in traveling, are attended with safety, and to encourage them to exercise ordinary care for their own safety. The appellant, in this case, does not pretend to have been exercising any care, ordinary or otherwise, for his own safety.

While the petition in the case, at bar, alleges that the bridge of the appellee had a floor in it, it does not show by anything alleged, that it was put there for the purpose of accommodating persons in traveling over it, or that any invitation was thereby extended to the public to use the railroad track over the bridge as a passage way. The appellant, with the knowledge that trains and engines passed over the bridge, at such times as the railroad company had desire for them to do so; that the bridge was not of sufficient width to accommodate a foot passenger upon it at the same time with a locomotive; that the distance from the bridge down to the creek below it was forty . or fifty feet;   that it was at night, when those operating the engine would probably be unable to see him until too late to save him, if they should see him; and without any right to travel there, but for his own convenience, undertook to walk over this bridge. Under circumstances of this kind, those operating the engine would not owe him any duty to keep a lookout for him, nor to give any signals of the approach of the engine, and he did not have any right to complain that the engine was not under control of the persons having charge of it, or that no lights were displayed, or any lookout had, or any signals given, or that the engine was not properly manned or managed, or that the ostler in charge of it was incompetent, and 'neither did he have any right to expect that those operating the engine would anticipate his presence upon the bridge. It has been so often held by this court, that it is needless to cite authorities in support of it, that the only duty which those operating a railroad train owe to a trespasser, is the humane duty of exercising ordinary care for his safety, after they have discovered the peril in which he has placed himself.

The allegation in the petition, that those in charge of the engine saw his peril, or by the exercise of ordinary care could have seen him, and failed to use ordinary care to prevent his injuries, after they had seen him, is nothing more than an allegation, that they could have seen him, if they had been maintaining a lookout for him; but it was not a duty of theirs to keep a lookout for him.   C. & O. Ry. Co. v. Lang's Admr., 135 Ky., 86.

It is therefore ordered that the judgment appealed from be affirmed.