# Valentine Sierzchula, Appellee, v. Chicago & Alton Railroad Company, Appellant.

## Gen. No. 6,502.

1. MASTER AND SERVANT, § 550*—*when declaration in action for negligence is good after verdict.* A declaration charging as negligence that defendant "carelessly and negligently caused said train to strike the plaintiff," in an action by a servant against a railroad company to recover damages for such negligence, *held* good after verdict.

2. MASTER AND SERVANT, § 98*—*what is subject of inquiry in action under Federal Employers' Liability Act.* In an action brought under the Federal Employers' Liability Act, providing that contributory negligence shall diminish damages, the inquiry is whether or not the evidence shows that the defendant's trainmen neglected a duty owed to plaintiff which either with or without negligence on his part was the proximate cause of the injury, where plaintiff was struck by defendant's train.

3. MASTER AND SERVANT, § 106*—*what is duty of train crew to avoid injury to section man.* In the absence of knowledge or notice of danger, a train crew owes no duty to a section man to warn him of the approach of the train or to keep the train under control to avoid injuring him, and may reasonably presume that the section man will act on the ordinary instincts of human nature in avoiding danger and injury.

4. MASTER AND SERVANT, § 772*—*when evidence is insufficient to warrant direction of verdict for defendant.* Evidence that plaintiff, a section man, was seen by defendant's train crew and timely warned of his danger in going upon the defendant's tracks and disregarded the warning, *held* insufficient to warrant directing a verdict for defendant on that ground.

5. MASTER AND SERVANT, § 683*—*when evidence is insufficient to show negligence in operation of train.* Evidence *held* insufficient to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

prove the charge that defendant carelessly and negligently caused its railroad train to strike plaintiff, a section man, whereby he was injured.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the October term, 1917. Reversed with finding of fact. Opinion filed February 12, 1918.

O'DONNELL, DONOVAN & BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

JAMES W. FAULKNER and JOHN W. DOWNEY, for appellee.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

In September, 1913, appellee, Valentine Sierzchula, was in the employ of appellant as a section hand working on its double track roadbed between Romeo and Lemont, two stations on its Joliet and Chicago line. He was about 68 years old, an experienced section hand, and had been working for appellant on that line several months. On a Monday morning he, with 6 other members of his gang, went on a hand car to a point near a small bridge to continue work ballasting the track. When last there they had left part of their tools in a box and hid part of them in the weeds. They removed their hand car and were getting their tools when appellee crossed the southbound track, and, without looking south, stepped over the west rail of the northbound track and was struck by the engine of a passenger train running north at a rate of 30 to 35 miles an hour until near the place of the accident, and slowing down to about 12 or 15 miles an hour at that place. The location was in the country away from highway crossings. There was no statutory duty to there ring a bell or sound a whistle. The train was running on time, appellee was familiar with the situation, knew when the train was due at the next station,

and understood from instructions he had theretofore received that it was a section hand's duty to look out for trains. The place in question was on a curve of 1 degree and 30 minutes to the northeast, 3,300 feet in length. The right of way was 100 feet wide. The roadbed or embankment on which the tracks were laid extended 7 or 8 feet from the outside rail of the track. In the absence of weeds at the side of the roadbed a train approaching from the south could be seen at a distance of about 1,500 feet. At this time there were tall weeds growing on the right of way. Appellee offered evidence tending to show that the view to the south was so obstructed that an approaching train could not be seen for more than 100 feet, and that there was no signal or warning of the approach of this passenger train. Appellant's evidence indicated that there was a clear view from the point where appellee was struck several hundred feet to the south. The engineer of the train had died before the trial, but the fireman testified that he was 500 or 600 feet from appellee when he first saw him; that the engineer blew the whistle, and, after running 100 feet, applied the brakes and that the train stopped with its rear car at about the place where appellee was struck. Several witnesses, including one called by appellee, corroborated the fireman saying they heard the whistle. Appellee and other of his witnesses testified that they did not hear it and would have heard it if it had sounded. Appellant's theory is that there was a clear view of the south for several hundred feet; that the trainmen saw appellee and gave him sufficient warning to enable any one in the exercise of ordinary care to escape danger. Appellee's theory is that the view was obstructed by weeds, and the train approached without signal or warning. It is not claimed that the trainmen had any notice that appellee was on the track except a general knowledge that section men might be

engaged on any part of the right of way keeping the track in order.

Appellee's injury was an oblique fracture of the left tibia. He was in the hospital about 8 weeks under the care of a surgeon, his expenses there paid by appellant. He claimed at the time of the trial he was still unable to perform manual labor. He brought this action to recover for that injury and had a verdict for $4,000, on which the court, after overruling the defendant's motions for a new trial and in arrest entered judgment.

The case was tried on one count of the declaration charging as negligence that the defendant ''carelessly and negligently caused said train to strike the said appellee.'' The general issue was pleaded. It is argued that the allegation of negligence is insufficient and that the motion in arrest of judgment should have been granted, and claimed that the averment in *Chicago City Ry. Co. v. Jennings*, 157 Ill. 274, that the defendant's servants ''carelessly and improperly drove and managed the motor and train'' is so substantially different from that in the present case that the *Jennings* case is not an authority sustaining this declaration. We are of the opinion that the declaration was at least good after verdict on the authority of *City of Chicago v. Selz, Schwab & Co.*, 202 Ill. 545, 548; but it is to be remembered that the negligence charged is confined to the operation of the train, and no question is presented as to a safe place to work or the failure of the foreman of the section gang to warn appellee of the approach of the train.

If appellant's theory of the facts is correct it is not guilty of the negligence charged. If appellee's theory is correct, the question is presented whether the trainmen neglected any duty owed to appellee to give him warning or to approach with the engine under control to avoid injuring him. The action is

brought under the Federal Employers' Liability Act which provides that:

"The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

Therefore the inquiry is whether or not the evidence shows the trainmen neglected a duty owed to appellee which either with or without negligence on his part was the proximate cause of the injury. (*Hardwick v. Wabash R. Co.*, 181 Mo. App. 156.) Appellee's negligence cannot bar a recovery if appellant was negligent, it being impossible that his negligence should equal the combined negligence of the two. (*Pennsylvania Co. v. Cole*, 214 Fed. 948.) It may be said in passing that if conceding appellant was negligent, appellee was also negligent, and the verdict was as large as the injury warranted in the absence of the statutory provision requiring it to be diminished.

The inquiry is whether, under the evidence most favorable to appellee, there is shown any failure of appellant's servants, the trainmen, to perform any duty owed him; whether, under ordinary circumstances, a railroad company owes a duty to its section hands employed to keep the roadbed in order and safe to warn them of the approach of trains that are running in the ordinary manner and on the usual time at points in the country where the trainmen have no other reason to anticipate their presence than the fact that they may be found working at various places.

Cases are numerous dealing with the duties of railway companies to persons rightfully on their tracks, as they may be under a variety of conditions other than that here presented; as for instance, at stations, approaches to stations, and places where workmen are engaged in bridge building or other construction work. Different considerations govern different situations. There is a class of cases dealing entirely with the

duty of railroads to their section men, and some conflict of authority in other jurisdictions in part reconciled by the different facts under consideration when apparently conflicting rules were announced.

Our Supreme Court in *Illinois Cent. R. Co. v. Modglin,* 85 Ill. 481, held in case of an injury to an employee using a hand car on a track of the railroad company, that there was not the least ground on which to base a charge of negligence of the railroad company, because he knew perfectly well what he was required to do when he used the hand car, and that his hand car was subservient to trains and had to give them the road; that he knew perfectly well the movements of the train that injured him and knew what time it would pull over the track. It was there charged that no whistle was sounded and the court said the law did not require the train to sound a whistle at that spot, but suggested that it would be inclined to hold a railroad company knowing or having reasonable grounds to believe there was a person on the track, or in danger of a collision, guilty of negligence if sounding the whistle or slacking the speed of the train would prevent accident. We are cited to no later opinion of that court and have found none. This court in *Chicago & N. W. Ry. Co. v. Thomson,* 128 Ill. App. 594, 597, said that the proof showed section men were required to look out for all trains running on their section; they were required to look out for themselves and trains in all directions at all times, and added: "It is manifest that the commercial needs of the country would not be answered by a railroad on which trains were required to look out for all men working on and about the track and to run slowly enough and have trains under such control as to avoid injuring them if they get on the track in front of an advancing train." And in *Dempsey v. Chicago, R. I. & P. Ry. Co.,* 168 Ill. App. 281—a case of injury to a section hand familiar with the tracks and the opera-

tion of trains there and the rules of the defendant that section men should look out for trains and keep out of their way—that the defendant was not liable to the plaintiff and there should have been an instructed verdict. The Appellate Court of the Third District (opinion by Mr. Justice Wright), *Chicago & A. R. Co. v. Wild,* 109 Ill. App. 38, reversing a judgment without remanding in a case of injury to a section man working on the track, said: "The master was not bound to run the train as if expecting the track to be occupied by the hand car, it being well known to all that it is the business of the section men to watch for and keep out of the way of all trains. * * * Neither was the master bound to foresee the occurrence of fog, and provide a special warning or signal." The opinion discusses the case as one of assumed risk, but in the finding of fact it is recited "that appellant is not guilty of the negligence charged in the declaration." In *Fritz v. Wabash R. Co.,* 181 Ill. App. 18, 21 (Third District), dealing with a condition similar to the one in the present case, the court said: "Deceased was not killed at a place where the law required defendant to ring a bell or sound a whistle; and defendant is not required to ring a bell or sound a whistle while proceeding along its track for the purpose of informing employees who are engaged in the repair of its tracks of the approach of a train."

There is a note in L. R. A. 1916 F 564, limited to the subject of the duty of a railroad company to maintain a lookout for employees of the class known as section men. The author says the rule seems to be as indicated in *Leighton v. Wheeler,* 106 Me. 450, that the engineer in charge of a railroad train does not owe to the section men of the road the duty to maintain a lookout for their presence on the track, but that the rule is limited to places where trainmen have a right to expect a clear track. That under ordinary circumstances no such duty exists is held in *Chesapeake &*

*O. R. Co. v. Lang's Adm'x,* 135 Ky. 76, 121 S. W. 993; and *Degonia v. St. Louis, I. M. & S. R. Co.,* 224 Mo. 564, 123 S. W. 807. In *Nivert v. Wabash R. Co.,* 232 Mo. 626, 135 S. W. 33, there is assumed an established rule in that State that the agents and servants in charge of railway trains owe no duty to look out for the safety of trackmen and section hands. In the *Degonia* case, *supra,* it is held that the fact of section hands being scattered along the railroad tracks from one station to the other so that they might be found at any point does not deprive the railroad company of the right to rely upon a clear track, and this for the reason that such employees are bound to look out for their own protection. The same rule is recognized in *Cincinnati, N. O. & T. P. R. Co. v. Swann's Adm'x,* 160 Ky. 458, L. R. A. 1915 C 27. Also *O'Brien v. Erie R. Co.,* 210 N. Y. 96, 103 N. E. 895. In *Blankenship's Adm'r v. Norfolk & W. R. Co.,* 147 Ky. 260, 143 S. W. 995, the court said: "From the very nature of the case it would be unreasonable and impracticable, as well as unnecessary, to undertake such a duty." In *Land v. St. Louis & S. F. R. Co.,* 95 Kan. 441, 148 Pac. 612, it was said that to require a lookout for section men would interfere with the operation of trains and impede their progress. *Aerkfetz v. Humphreys,* 145 U. S. 418, is to the effect that no such duty exists. Also *New York, N. H. & H. R. Co. v. Pontillo,* 211 Fed. 331. The Supreme Court of Missouri in an early case had held that the trainmen were under a duty to notify section men of their approach, but in *Ginnochio v. Illinois Cent. R. Co.,* 155 Mo. App. 163, the court says it seems that the more recent decisions of our Supreme Court adopt the view of the Supreme Court of the United States recited in *Aerkfetz v. Humphreys,* 145 U. S. 418, and the Supreme Court of Massachusetts in *Riccio v. New York, N. H. & H. R. Co.,* 189 Mass. 358, to the effect that because of the peculiar nature of the employment the railroad owes no duty to the sec-

tion hand other than to avert his injury after the engineer has actually seen his perilous situation. A great number of cases have arisen under facts similar to those in the present case, and, as before said, there is some conflict, but the great weight of authority outside of this State is to the effect that in the absence of knowledge or notice of danger the train crew owes no duty to the section man to warn him of its approach or to keep the train under control to avoid injuring him, and the decisions of our State above noted show our courts in accord with that doctrine. There is nothing extraordinary about the circumstances of this case. There was a curve of the road and perhaps a high growth of weeds obstructing the view. But railroads are often operated in places where there is no extended view of the track because of the lay of the land, obstacles thereon, or fog or steam. The court said in *Land v. St. Louis & S. F. R. Co., supra:* "Practically, if it were incumbent upon the engineer to modify the speed of a train whenever passing through fog or steam in order to avoid collision with the section men, the service demanded and deserved by the public could no longer be assured. Trackmen are employed for the very object of enabling the road to furnish such service and cannot require the employer to impair its efficiency by acting as watchman for them." In such instances the condition is well known to the trackman, and in the exercise of ordinary prudence he may be presumed to exercise the required vigilance and keep out of the way of approaching trains. While in this case his care or want of care is not in and of itself controlling, still, in considering whether the train crew was negligent, it is fair to assume, as has been said in many cases, that they might reasonably presume the trackman would act on the ordinary instincts of human nature in avoiding danger and injury.

The evidence impresses us with the belief that the

view was not so much obstructed as appellee claims, and that he was seen by the engineer and fireman and timely warned of his danger and disregarded the warning. But there was sufficient conflict of evidence on that question to forbid the trial court directing a verdict on that ground, and we would hesitate to reverse without remanding if appellant's defense rested entirely on that theory of the case. We have therefore considered and discussed the condition as presented by appellee's testimony and conclude that even on that theory of the facts the negligence charged in the declaration was not proven. The judgment is reversed.

*Reversed with finding of fact.*

Finding of fact. We find that the defendant was not guilty of any negligence charged in the declaration.